## UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF COLUMBIA

| |
|---|
| UNITED STATES OF AMERICA,<br><br>        *Plaintiff*,<br><br>   v.<br><br>GRAY TELEVISION, INC., and<br>RAYCOM MEDIA, INC.,<br><br>        *Defendants*. |

## FINAL JUDGMENT

WHEREAS, Plaintiff, United States of America, filed its Complaint on December 14, 2018, and Defendant Gray Television, Inc., and Defendant Raycom Media, Inc., by their respective attorneys, have consented to the entry of this Final Judgment without trial or adjudication of any issue of fact or law and without this Final Judgment constituting any evidence against or admission by any party regarding any issue of fact or law;

AND WHEREAS, Defendants agree to be bound by the provisions of this Final Judgment pending its approval by the Court;

AND WHEREAS, the essence of this Final Judgment is the prompt and certain divestiture of certain rights or assets by Defendants to assure that competition is not substantially lessened;

AND WHEREAS, the United States requires Defendants to make certain divestitures for the purpose of remedying the loss of competition alleged in the Complaint;

AND WHEREAS, Defendants have represented to the United States that the divestitures required below can and will be made and that Defendants will later raise no claim of hardship or

difficulty as grounds for asking the Court to modify any of the divestiture provisions contained below;

NOW THEREFORE, before any testimony is taken, without trial or adjudication of any issue of fact or law, and upon consent of the parties, it is ORDERED, ADJUDGED, AND DECREED:

## I. JURISDICTION

This Court has jurisdiction over the subject matter of and each of the parties to this action. The Complaint states a claim upon which relief may be granted against Defendants under Section 7 of the Clayton Act, as amended, 15 U.S.C. § 18.

## II. DEFINITIONS

As used in this Final Judgment:

A.    "Acquirer" means Scripps, TEGNA, Lockwood, Marquee, or any other entity or entities to which Defendants divest any of the Divestiture Assets.

B.    "Divestiture Assets" means the Divestiture Stations and all assets, tangible or intangible, necessary for the operation of the Divestiture Stations as viable, ongoing commercial broadcast television stations, including, but not limited to, all real property (owned or leased), all broadcast equipment, office equipment, office furniture, fixtures, materials, supplies, and other tangible property relating to the Divestiture Stations; all licenses, permits, and authorizations issued by, and applications submitted to, the FCC and other government agencies relating to the Divestiture Stations; all contracts (including programming contracts and rights), agreements, network affiliation agreements, leases, and commitments and understandings of Defendants relating to the Divestiture Stations; all trademarks, service marks, trade names, copyrights, patents, slogans, programming materials, and promotional materials relating to the Divestiture Stations; all customer lists,

contracts, accounts, and credit records related to the Divestiture Stations; and all logs and other records maintained by Defendants in connection with the Divestiture Stations. Divestiture Assets does not include Excluded Assets.

C.  "Divestiture Stations" means WTNZ, WTOL, KXXV, KRHD-CD, WTXL-TV, WFXG, KWES-TV, WPGX, WSWG, and WDFX-TV.

D.  "DMA" means Designated Market Area as defined by The Nielsen Company (US), LLC, based upon viewing patterns and used by BIA Advisory Services' *Investing in Television Market Report 2018* (1st edition).  DMAs are ranked according to the number of television households therein and are used by broadcasters, advertisers, and advertising agencies to aid in evaluating television audience size and composition.

E.  "Excluded Assets" means

(1)  the Telemundo affiliation agreement and programming stream (including any syndicated programming), receiver, program logs and related materials, related intellectual property and domain names, relating in all cases to KWES-TV and/or the Odessa-Midland, Texas, DMA;

(2)  the CW affiliation agreement and programming stream (including any syndicated programming), receiver, program logs and related materials, related intellectual property and domain names, relating in all cases to KWES-TV and/or the Odessa-Midland, Texas, DMA;

(3)  the Telemundo affiliation agreement and programming stream (including any syndicated programming), receiver, program logs and related materials, related intellectual property and domain names, relating in all cases to KXXV; and

(4)  the CW affiliation agreement and programming stream (including any syndicated programming), receiver, program logs and related materials,

related intellectual property and domain names, related in all cases to

WSWG.

F.    "FCC" means the Federal Communications Commission.

G.    "Gray" means Defendant Gray Television, Inc., a Georgia corporation

headquartered in Atlanta, Georgia, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers,

managers, agents, and employees.

H.    "KRHD-CD" means the ABC-affiliated broadcast television station bearing that

call sign located in the Waco-Temple-Bryan, Texas, DMA, owned by Raycom.

I.    "KWES-TV" means the NBC-affiliated broadcast television station bearing that

call sign located in the Odessa-Midland, Texas, DMA, owned by Raycom.

J.    "KXXV" means the ABC-affiliated broadcast television station bearing that call

sign located in the Waco-Temple-Bryan, Texas, DMA, owned by Raycom.

K.    "Lockwood" means Greensboro TV, LLC, a Virginia limited liability

company headquartered in Hampton, Virginia, its successors and assigns, and its

subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their

directors, members, officers, managers, agents, and employees.

L.    "Marquee" means Marquee Broadcasting Georgia, Inc., a Georgia corporation

headquartered in Lawrenceville, Georgia, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers,

managers, agents, and employees.

M.    "Raycom" means Defendant Raycom Media, Inc., a Delaware corporation

headquartered in Montgomery, Alabama, its successors and assigns, and its subsidiaries,

divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers,

managers, agents, and employees.

N.      "Scripps" means the E.W. Scripps Company, an Ohio corporation headquartered in Cincinnati, Ohio, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

O.      "TEGNA" means TEGNA Inc., a Delaware corporation headquartered in McLean, Virginia, its successors and assigns, and its subsidiaries, divisions, groups, affiliates, partnerships, and joint ventures, and their directors, officers, managers, agents, and employees.

P.      "WDFX-TV" means the FOX-affiliated broadcast television station bearing that call sign located in the Dothan, Alabama, DMA, owned by Raycom.

Q.      "WFXG" means the FOX-affiliated broadcast television station bearing that call sign located in the Augusta, Georgia, DMA, owned by Raycom.

R.      "WPGX" means the FOX-affiliated broadcast television station bearing that call sign located in the Panama City, Florida, DMA, owned by Raycom.

S.      "WSWG" means the CBS-affiliated broadcast television station bearing that call sign located in the Albany, Georgia, DMA, owned by Gray.

T.      "WTNZ" means the FOX-affiliated broadcast television station bearing that call sign located in the Knoxville, Tennessee, DMA, owned by Raycom.

U.      "WTOL" means the CBS-affiliated broadcast television station bearing that call sign located in the Toledo, Ohio, DMA, owned by Raycom.

V.       "WTXL-TV" means the ABC-affiliated broadcast television station bearing that call sign located in the Tallahassee, Florida-Thomasville, Georgia, DMA, owned by Raycom.

### III. <u>APPLICABILITY</u>

A.      This Final Judgment applies to Defendants and all other persons in active concert or participation with any of them who receive actual notice of this Final Judgment by personal service or otherwise.

B.      If, prior to complying with Sections IV and V of this Final Judgment, Defendants sell or otherwise dispose of all or substantially all of their assets or of lesser business units that include the Divestiture Assets, they shall require the purchaser to be bound by the provisions of this Final Judgment.  Defendants need not obtain such an agreement from the Acquirers.

C.      If, prior to the entry of this Final Judgment, Defendants sell or otherwise dispose of business units that do not include any of the Divestiture Assets, then this Final Judgment shall not apply to such business units.

### IV. <u>DIVESTITURES</u>

A.       Defendants are ordered and directed, within ninety (90) calendar days after the filing of the Complaint in this matter, or five (5) calendar days after notice of entry of this Final Judgment by the Court, whichever is later, to divest the Divestiture Assets in a manner consistent with this Final Judgment to one or more Acquirers acceptable to the United States, in its sole discretion.  The United States, in its sole discretion, may agree to one or more extensions of this time period not to exceed ninety (90) calendar days in total, and shall notify the Court in such circumstances.

B.      With respect to divestiture of the Divestiture Assets by Defendants, or by the Divestiture Trustee appointed pursuant to Section V of this Final Judgment, if applications have been filed with the FCC within the period permitted for divestiture seeking approval to assign or transfer licenses to the Acquirer(s) of the Divestiture Assets, but an order or other dispositive action by the FCC on such applications has not been issued before the end of the period

permitted for divestiture, the period shall be extended with respect to divestiture of the Divestiture Assets for which no FCC order has issued until five (5) days after such order is issued. Defendants agree to use their best efforts to divest the Divestiture Assets and to obtain all necessary FCC approvals as expeditiously as possible. This Final Judgment does not limit the FCC's exercise of its regulatory powers and process with respect to the Divestiture Assets. Authorization by the FCC to conduct the divestiture of a Divestiture Asset in a particular manner will not modify any of the requirements of this Final Judgment.

C.      In the event that Defendants are attempting to divest the KXXV, KRHD-CD, or WTXL-TV Divestiture Assets to an Acquirer other than Scripps; the WTOL or KWES-TV Divestiture Assets to an Acquirer other than TEGNA; the WTNZ, WFXG, WPGX, or WDFX-TV Divestiture Assets to an Acquirer other than Lockwood; or the WSWG Divestiture Assets to an Acquirer other than Marquee:

> (1) Defendants, in accomplishing the divestitures ordered by this Final Judgment, promptly shall make known, by usual and customary means, the availability of the Divestiture Assets;
>
> (2) Defendants shall inform any person making an inquiry regarding a possible purchase of the relevant Divestiture Assets that they are being divested pursuant to this Final Judgment and provide that person with a copy of this Final Judgment;
>
> (3) Defendants shall offer to furnish to all prospective Acquirers, subject to customary confidentiality assurances, all information and documents relating to the relevant Divestiture Assets customarily provided in a due diligence process except such information or documents subject to the attorney-client privilege or work-product doctrine; and

(4) Defendants shall make available such information to the United States at the same time that such information is made available to any other person.

D.      Defendants shall provide each Acquirer and the United States information relating to the personnel involved in the operation and management of the relevant Divestiture Assets to enable the Acquirer to make offers of employment.  Defendants will not interfere with any negotiations by any Acquirer to employ or contract with any Defendant employee whose primary responsibility relates to the operation or management of the relevant Divestiture Assets.

E.      Defendants shall permit the prospective Acquirers of the Divestiture Assets to have reasonable access to personnel and to make inspections of the physical facilities of the Divestiture Assets; access to any and all environmental, zoning, and other permit documents and information; and access to any and all financial, operational, or other documents and information customarily provided as part of a due diligence process.

F.      Defendants shall warrant to the Acquirers that each asset will be operational on the date of sale.

G.      Defendants shall not take any action that will impede in any way the permitting, operation, or divestiture of the Divestiture Assets.

H.      At the option of the respective Acquirer, Defendants shall enter into a transition services agreement with each Acquirer for a period of up to six (6) months to facilitate the continuous operations of the relevant Divestiture Assets until the Acquirer can provide such capabilities independently.  The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for the services provided, and shall be subject to the approval of the United States, in its sole discretion.  The United States in its sole discretion may approve one or more extensions of this agreement for a

total of up to an additional six (6) months.

I.    In the case of Lockwood as the Acquirer of the WFXG and/or WDFX-TV Divestiture Assets and at the option of Lockwood, Defendants shall enter into an agreement with Lockwood to provide to WFXG and WDFX-TV (or, if Lockwood is purchasing just one of those stations, that station) substantially the same local news programming as the respective stations currently receive from other stations owned or operated by Raycom for one (1) year after the sale of the WFXG and/or WDFX-TV Divestiture Assets, respectively, to Lockwood, with such agreement to be terminable by Lockwood on no more than thirty (30) days' notice. The terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for the services provided, and shall be subject to the approval of the United States, in its sole discretion.  The United States in its sole discretion, and at the option of Lockwood, may approve one or more extensions of any such agreement for a total of up to an additional one (1) year.

J.    In the case of Marquee as the Acquirer of the WSWG Divestiture Assets, the transition services agreement contemplated by Paragraph IV(H) shall include, at the option of Marquee, an agreement by Defendants to provide to WSWG substantially the same local news programming as that station currently receives from other stations owned or operated by Gray for at least ninety (90) days after the sale of the WSWG Divestiture Assets, with such agreement to be terminable by Marquee on no more than thirty (30) days' notice, except that such agreement may omit up to two (2) hours of the news programming currently provided to WSWG each week, the identification of the hours to be omitted to be determined by Marquee. For the avoidance of doubt, the terms and conditions of any contractual arrangement intended to satisfy this provision must be reasonably related to market conditions for the services provided, and shall be subject to the approval of the United States, in its sole discretion.

K.      Defendants shall warrant to the Acquirers (1) that there are no material defects in the environmental, zoning, or other permits pertaining to the operation of the Divestiture Assets, and (2) that, following the sale of the Divestiture Assets, Defendants will not undertake, directly or indirectly, any challenges to the environmental, zoning, or other permits relating to the operation of the Divestiture Assets.

L.      Unless the United States otherwise consents in writing, the divestitures pursuant to Section IV, or by the Divestiture Trustee appointed pursuant to Section V of this Final Judgment, shall include the entire Divestiture Assets and shall be accomplished in such a way as to satisfy the United States, in its sole discretion, that the Divestiture Assets can and will be used by each Acquirer as part of a viable, ongoing commercial television broadcasting business. Divestiture of the Divestiture Assets may be made to one or more Acquirers, provided that in each instance it is demonstrated to the sole satisfaction of the United States that the Divestiture Assets will remain viable, and the divestiture of such assets will remedy the competitive harm alleged in the Complaint.  The divestitures, whether made pursuant to Section IV or Section V of this Final Judgment:

(1) shall be made to Acquirers that, in the United States' sole judgment, have the intent and capability (including the necessary managerial, operational, technical, and financial capability) to compete effectively in the commercial television broadcasting business; and

(2) shall be accomplished so as to satisfy the United States, in its sole discretion, that none of the terms of any agreement between any Acquirer and Defendants give Defendants the ability unreasonably to raise the costs of the Acquirer, to lower the efficiency of the Acquirer, or otherwise to interfere in the ability of the Acquirer to compete effectively.

## V. <u>APPOINTMENT OF DIVESTITURE TRUSTEE</u>

A.      If Defendants have not divested the Divestiture Assets within the time period specified in Paragraph IV(A) and Paragraph IV(B), Defendants shall notify the United States of that fact in writing, specifically identifying the Divestiture Assets that have not been divested. Upon application of the United States, the Court shall appoint a Divestiture Trustee selected by the United States and approved by the Court to effect the divestiture of the Divestiture Assets that have not yet been divested.

B.      After the appointment of a Divestiture Trustee becomes effective, only the Divestiture Trustee shall have the right to sell the relevant Divestiture Assets.  The Divestiture Trustee shall have the power and authority to accomplish the divestiture to an Acquirer acceptable to the United States, in its sole discretion, at such price and on such terms as are then obtainable upon reasonable effort by the Divestiture Trustee, subject to the provisions of this Final Judgment, and shall have such other powers as this Court deems appropriate. Subject to Paragraph V(D) of this Final Judgment, the Divestiture Trustee may hire at the cost and expense of Defendants any agents, investment bankers, attorneys, accountants, or consultants, who shall be solely accountable to the Divestiture Trustee, reasonably necessary in the Divestiture Trustee's judgment to assist in the divestiture.  Any such agents, investment bankers, attorneys, accountants, or consultants shall serve on such terms and conditions as the United States approves, including confidentiality requirements and conflict of interest certifications.

C.      Defendants shall not object to a sale by the Divestiture Trustee on any ground other than the Divestiture Trustee's malfeasance.  Any such objections by Defendants must be conveyed in writing to the United States and the Divestiture Trustee within ten (10) calendar days after the Divestiture Trustee has provided the notice required under Section VI.

D.      The Divestiture Trustee shall serve at the cost and expense of Defendants

pursuant to a written agreement, on such terms and conditions as the United States approves,

including confidentiality requirements and conflict of interest certifications.  The Divestiture

Trustee shall account for all monies derived from the sale of the relevant Divestiture Assets and

all costs and expenses so incurred.  After approval by the Court of the Divestiture Trustee's

accounting, including fees for its services yet unpaid and those of any professionals and agents

retained by the Divestiture Trustee, all remaining money shall be paid to Defendants and the

trust shall then be terminated.  The compensation of the Divestiture Trustee and any

professionals and agents retained by the Divestiture Trustee shall be reasonable in light of the

value of the Divestiture Assets subject to sale by the Divestiture Trustee and based on a fee

arrangement providing the Divestiture Trustee with incentives based on the price and terms of

the divestiture and the speed with which it is accomplished, but the timeliness of the divestiture

is paramount.  If the Divestiture Trustee and Defendants are unable to reach agreement on the

Divestiture Trustee's or any agent's or consultant's compensation or other terms and conditions

of engagement within fourteen (14) calendar days of the appointment of the Divestiture Trustee,

agent, or consultant, the United States may, in its sole discretion, take appropriate action,

including making a recommendation to the Court.  The Divestiture Trustee shall, within three (3)

business days of hiring any other agents or consultants, provide written notice of such hiring and

the rate of compensation to Defendants and the United States.

E.      Defendants shall use their best efforts to assist the Divestiture Trustee in

accomplishing the required divestitures.  The Divestiture Trustee and any agents or consultants

retained by the Divestiture Trustee shall have full and complete access to the personnel, books,

records, and facilities of the business to be divested, and Defendants shall provide or develop

financial and other information relevant to such business as the Divestiture Trustee may

reasonably request, subject to reasonable protection for trade secrets; other confidential research, development, or commercial information; or any applicable privileges. Defendants shall take no action to interfere with or to impede the Divestiture Trustee's accomplishment of the divestiture.

F.      After its appointment, the Divestiture Trustee shall file monthly reports with the United States and, as appropriate, the Court setting forth the Divestiture Trustee's efforts to accomplish the relevant divestitures ordered under this Final Judgment. To the extent such reports contain information that the Divestiture Trustee deems confidential, such reports shall not be filed on the public docket of the Court. Such reports shall include the name, address, and telephone number of each person who, during the preceding month, made an offer to acquire, expressed an interest in acquiring, entered into negotiations to acquire, or was contacted or made an inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each contact with any such person. The Divestiture Trustee shall maintain full records of all efforts made to divest the relevant Divestiture Assets.

G.      If the Divestiture Trustee has not accomplished the divestitures ordered under this Final Judgment within six (6) months after its appointment, the Divestiture Trustee shall promptly file with the Court a report setting forth (1) the Divestiture Trustee's efforts to accomplish the required divestitures, (2) the reasons, in the Divestiture Trustee's judgment, why the required divestitures have not been accomplished, and (3) the Divestiture Trustee's recommendations. To the extent such report contains information that the Divestiture Trustee deems confidential, such reports shall not be filed on the public docket of the Court. The Divestiture Trustee shall at the same time furnish such report to the United States, which shall have the right to make additional recommendations consistent with the purpose of the trust. The Court thereafter shall enter such orders as it shall deem appropriate to carry out the purpose of this Final Judgment, which may, if necessary, include extending the trust and the term of the

Divestiture Trustee's appointment by a period requested by the United States.

H.      If the United States determines that the Divestiture Trustee has ceased to act or failed to act diligently or in a reasonably cost-effective manner, it may recommend that the Court appoint a substitute Divestiture Trustee.

## VI. <u>**NOTICE OF PROPOSED DIVESTITURE**</u>

A.      Within (10) calendar days after notice of entry of this Final Judgment by the Court, or two (2) business days following execution of a definitive divestiture agreement, whichever is later, Defendants or the Divestiture Trustee, whichever is then responsible for effecting the divestitures required herein, shall notify the United States of any proposed divestiture required by Section IV or Section V of this Final Judgment.  If the Divestiture Trustee is responsible, it shall similarly notify Defendants.  The notice shall set forth the details of the proposed divestiture and list the name, address, and telephone number of each person not previously identified who tendered an offer for, or expressed an interest in or desire to acquire, any ownership interest in the relevant Divestiture Assets, together with full details of the same.

B.      Within fifteen (15) calendar days of receipt by the United States of such notice, the United States may request from Defendants, the proposed Acquirer, any other third party, or the Divestiture Trustee, if applicable, additional information concerning the proposed divestiture, the proposed Acquirer, and any other potential Acquirers.  Defendants and the Divestiture Trustee shall furnish any additional information requested within fifteen (15) calendar days of the receipt of the request, unless the parties shall otherwise agree.

C.      Within thirty (30) calendar days after receipt of the notice or within twenty (20) calendar days after the United States has been provided the additional information requested from Defendants, the proposed Acquirer, any third party, and the Divestiture Trustee, whichever is later, the United States shall provide written notice to Defendants and the

Divestiture Trustee, if there is one, stating whether or not it objects to the proposed divestiture. If the United States provides written notice that it does not object, the divestiture may be consummated, subject only to Defendants' limited right to object to the sale under Paragraph V(C) of this Final Judgment.  Absent written notice that the United States does not object to the proposed Acquirer, or upon objection by the United States, a divestiture proposed under Section IV or Section V shall not be consummated.  Upon objection by Defendants under Paragraph V(C), a divestiture proposed under Section V shall not be consummated unless approved by the Court.

## VII. __FINANCING__

Defendants shall not finance all or any part of any purchase made pursuant to Section IV or Section V of this Final Judgment.

## VIII. __HOLD SEPARATE__

Until the divestitures required by this Final Judgment have been accomplished, Defendants shall take all steps necessary to comply with the Hold Separate Stipulation and Order entered by this Court.  Defendants shall take no action that would jeopardize the divestitures ordered by this Court.

## IX. __AFFIDAVITS__

A.      Within twenty (20) calendar days of the filing of the Complaint in this matter, and every thirty (30) calendar days thereafter until the divestitures have been completed under Section IV and Section V of this Final Judgment, Defendants shall deliver to the United States an affidavit, signed by each Defendant's Chief Financial Officer and General Counsel or, subject to the approval of the United States, an officer of the Defendant, which shall describe the fact and manner of Defendants' compliance with Section IV and Section V of this Final Judgment.  Each such affidavit shall include the name, address, and telephone number of each

person who, during the preceding thirty (30) calendar days, made an offer to acquire, expressed

an interest in acquiring, entered into negotiations to acquire, or was contacted or made an

inquiry about acquiring, any interest in the Divestiture Assets, and shall describe in detail each

contact with any such person during that period.  Each such affidavit shall also include a

description of the efforts Defendants have taken to solicit buyers for and complete the sale of

the Divestiture Assets, including efforts to secure FCC or other regulatory approvals, and to

provide required information to prospective Acquirers, including the limitations, if any, on such

information.  Assuming the information set forth in the affidavit is true and complete, any

objection by the United States to information provided by Defendants, including limitations on

information, shall be made within fourteen (14) calendar days of receipt of such affidavit.

B.      Within twenty (20) calendar days after the filing of the Complaint in this matter,

Defendants shall deliver to the United States an affidavit that describes in reasonable detail all

actions Defendants have taken and all steps Defendants have implemented on an ongoing basis

to comply with Section VIII of this Final Judgment.  Defendants shall deliver to the United

States an affidavit describing any changes to the efforts and actions outlined in Defendants'

earlier affidavits filed pursuant to this Paragraph IX(B) within fifteen (15) calendar days after

the change is implemented.

C.      Defendants shall keep all records of all efforts made to preserve and divest the

Divestiture Assets until one year after such divestitures have been completed.

## X.  COMPLIANCE INSPECTION

A.      For the purposes of determining or securing compliance with this Final Judgment,

or of any related orders such as any Hold Separate Stipulation and Order, or of determining

whether the Final Judgment should be modified or vacated, and subject to any legally

recognized privilege, from time to time authorized representatives of the United States,

including agents and consultants retained by the United States, shall, upon written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, and on reasonable notice to Defendants, be permitted:

> (1) access during Defendants' office hours to inspect and copy, or at the option of the United States, to require Defendants to provide electronic copies of, all books, ledgers, accounts, records, data, and documents in the possession, custody, or control of Defendants, relating to any matters contained in this Final Judgment; and

> (2) to interview, either informally or on the record, Defendants' officers, employees, or agents, who may have their individual counsel present, regarding such matters.  The interviews shall be subject to the reasonable convenience of the interviewee and without restraint or interference by Defendants.

B.    Upon the written request of an authorized representative of the Assistant Attorney General in charge of the Antitrust Division, Defendants shall submit written reports or responses to written interrogatories, under oath if requested, relating to any of the matters contained in this Final Judgment as may be requested.

C.    No information or documents obtained by the means provided in this Section shall be divulged by the United States to any person other than an authorized representative of the executive branch of the United States, except in the course of legal proceedings to which the United States is a party (including grand jury proceedings), or for the purpose of securing compliance with this Final Judgment, or as otherwise required by law.

D.    If at the time that Defendants furnish information or documents to the United States, Defendants represent and identify in writing the material in any such information or

documents to which a claim of protection may be asserted under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure, and Defendants mark each pertinent page of such material, "Subject to claim of protection under Rule 26(c)(1)(G) of the Federal Rules of Civil Procedure," then the United States shall give Defendants ten (10) calendar days' notice prior to divulging such material in any legal proceeding (other than a grand jury proceeding).

## XI.  NO REACQUISITION AND LIMITATIONS ON COLLABORATIONS

A.      During the term of this Final Judgment, Defendants may not (1) reacquire any part of the Divestiture Assets; (2) acquire any option to reacquire any part of the Divestiture Assets or to assign the Divestiture Assets to any other person; (3) enter into any local marketing agreement, joint sales agreement, other cooperative selling arrangement, or shared services agreement (except as provided in this Paragraph XI(A) or in Paragraph XI(B)), or conduct other business negotiations jointly with any Acquirer with respect to the Divestiture Assets divested to such Acquirer; or (4) provide financing or guarantees of financing with respect to the Divestiture Assets.  The shared services prohibition does not preclude Defendants from continuing or entering into agreements in a form customarily used in the industry to (a) share news helicopters or (b) pool generic video footage that does not include recording a reporter or other on-air talent, and does not preclude Defendants from entering into any non-sales-related shared services agreement or transition services agreement that is approved in advance by the United States in its sole discretion.

B.      Paragraph XI(A) shall not prevent Defendants from entering into agreements to provide news programming to broadcast television stations included in the Divestiture Assets, provided that Defendants do not sell, price, market, hold out for sale, or profit from the sale of advertising associated with the news programming provided by Defendants under such agreements except by approval of the United States in its sole discretion.

## XII. **RETENTION OF JURISDICTION**

The Court retains jurisdiction to enable any party to this Final Judgment to apply to the Court at any time for further orders and directions as may be necessary or appropriate to carry out or construe this Final Judgment, to modify any of its provisions, to enforce compliance, and to punish violations of its provisions.

## XIII. **ENFORCEMENT OF FINAL JUDGMENT**

A. The United States retains and reserves all rights to enforce the provisions of this Final Judgment, including the right to seek an order of contempt from the Court. Defendants agree that in any civil contempt action, any motion to show cause, or any similar civil action brought by the United States regarding an alleged violation of this Final Judgment, the United States may establish a violation of the decree and the appropriateness of any remedy therefor by a preponderance of the evidence, and Defendants waive any argument that a different standard of proof should apply.

B. The Final Judgment should be interpreted to give full effect to the procompetitive purposes of the antitrust laws and to restore all competition the United States alleged was harmed by the challenged conduct. Defendants agree that they may be held in contempt of, and that the Court may enforce, any provision of this Final Judgment that, as interpreted by the Court in light of these procompetitive principles and applying ordinary tools of interpretation, is stated specifically and in reasonable detail, whether or not it is clear and unambiguous on its face. In any such interpretation, the terms of this Final Judgment should not be construed against either party as the drafter.

C. In any enforcement proceeding in which the Court finds that Defendants have violated this Final Judgment, the United States may apply to the Court for a one-time extension of this Final Judgment, together with such other relief as may be appropriate. In connection with any

successful effort by the United States to enforce this Final Judgment against a Defendant, whether litigated or resolved prior to litigation, that Defendant agrees to reimburse the United States for the fees and expenses of its attorneys, as well as any other costs including experts' fees, incurred in connection with that enforcement effort, including in the investigation of the potential violation.

## XIV. EXPIRATION OF FINAL JUDGMENT

Unless the Court grants an extension, this Final Judgment shall expire ten (10) years from the date of its entry, except that after five (5) years from the date of its entry, this Final Judgment may be terminated upon notice by the United States to the Court and Defendants that the divestitures have been completed and that the continuation of the Final Judgment no longer is necessary or in the public interest.

## XV.  **PUBLIC INTEREST DETERMINATION**

Entry of this Final Judgment is in the public interest.  The parties have complied with the requirements of the Antitrust Procedures and Penalties Act, 15 U.S.C § 16, including making copies available to the public of this Final Judgment, the Competitive Impact Statement, any comments thereon, and the United States' responses to comments.  Based upon the record before the Court, which includes the Competitive Impact Statement and any comments and responses to comments filed with the Court, entry of this Final Judgment is in the public interest.

Date: _June 5, 2019_

Court approval subject to procedures of
Antitrust Procedures and Penalties Act,
15 U.S.C. § 16

United States District Judge
CHRISTOPHER R. COOPER
**United States District Judge**

21